C. HYLAND JONES et al., as Executors of CHARLES H. JONES, Deceased, Respondents, *v.* PHILIP L. MORRISON et al., Copartners under the Firm Name of CHAS. H. JONES & Co., Appellants.

(Argued January 22, 1934; decided February 27, 1934.)

*Frank C. Laughlin, Stewart W. Bowers* and *Charles Hallett White* for appellants. The Appellate Division erred in holding that the purpose of the amended agreement was to indicate that the policy in suit was intended to be the absolute property of the deceased in any and all events. (*Earle* v. *McVeigh,* 91 U. S. 503; *Village of Rome* v. *Knox,* 14 How. Pr. 268; *Fire Department of Troy* v. *Bacon,* 2 Abb. Ct. of App. Dec. 127; *Genet* v. *D. & H. Canal Co.,* 163 N. Y. 173; *Patterson* v. *Meyerhofer,* 204 N. Y. 96; *Atwater & Co.* v. *Panama R. R. Co.,* 246 N. Y. 519; *Clayburgh* v. *Clayburgh,* 218 App. Div. 411;

*Bushey & Sons* v. *American Ins. Co.*, 237 N. Y. 24; *People ex rel. Wells & Newton Co.* v. *Craig*, 232 N. Y. 125; *The Clara*, 102 U. S. 200.)

*Herman Aaron* for respondents. The general language of the amending agreement must yield to the special and particular provisions made with respect to the policy in suit. (*348 Madison Ave. Corp.* v. *Marshall*, 212 App. Div. 672; 241 N. Y. 520; *Townsend* v. *Little*, 109 U. S. 504.)

CRANE, J. This appeal relates to a $22,000 life insurance policy taken out in the Connecticut General Life Insurance Company to insure the life of a limited partner, Charles H. Jones. He has died and the money is claimed by his general partners and by the executors of his estate. Who is entitled to it depends entirely upon the partnership agreement. Charles H. Jones was a limited partner having contributed $50,000 to the partnership. He was to get this back at some time and the insurance taken out was to secure the repayment. This is the purpose for the insurance which was carried by the partnership. Chas. H. Jones & Co., composed of Philip L. Morrison, William J. Banigan, as general partners, and Charles H. Jones, as limited partner, dealt in stocks, bonds, notes, drafts, loans and other securities in the city of New York. On January 2, 1928, the partnership articles were executed, wherein it is stated that Charles H. Jones as limited partner contributes $50,000 capital. The agreement is for one year, or to terminate sooner in case of the death of any of the partners. On dissolution the limited partner is to be repaid out of the net assets of the partnership his contribution of $50,000, with interest. To insure or secure this repayment, policies of life insurance were taken out upon the lives of all the partners, the premiums being carried as a partnership expense.

As the $22,000 life policy in the Connecticut General Life Insurance Company is the only one in dispute, our

attention will be drawn particularly to that one. The partners agreed as follows:

" 11. Life insurance on the lives of Philip L. Morrison, William J. Banigan and Charles H. Jones is now outstanding and is to be continued as follows:

" P. L. MORRISON
" $22,000.—John Hancock Mutual Life
               Ins. Co................Policy 818550
" $28,000.— Aetna Life Ins. Co....... " P572485
" W. J. BANIGAN
" $50,000.— Aetna Life Ins. Co....... " P572445
" CHAS. H. JONES
" $22,000.— Conn. Gen'l Life Ins. Co.. " 182170
" $28,000.— Aetna Life Ins. Co....... " N566100

" Premiums thereon shall be treated as an item of expense of the firm.

" Such policies have been obtained for the purpose of securing repayment of the Limited Partner's contribution and have been assigned to such Limited Partner or his executors.

" Upon the decease of any one of the partners the proceeds of the policy or policies upon the life of such deceased partner shall be applied in repayment of any unpaid balance of the Limited Partner's contribution, and any such proceeds not required for this purpose shall be the property of the firm. The Limited Partner agrees that at any time upon the repayment of his contribution in full, he, or in case he is dead, his legal representative, will assign and deliver to the firm all of the above policies then outstanding. It is agreed that if the contribution of the Limited Partner is repaid in full at any time during his life, the Limited Partner shall have the privilege of paying to the firm the cash surrender value, if any (as of the date of such repayment) of the policies on his life, and thereupon all policies on the life of the Limited Partner shall become his sole property,— and the firm shall have no further interest therein."

The partnership is now terminated by the death of Charles H. Jones, the limited partner. His estate becomes entitled to the $50,000. The partnership assets are charged with this amount. The partners have carried the life insurance policies in order to secure this $50,000. Does the estate of Mr. Jones get the $50,000 from the surviving partners and also the $22,000, the proceeds of the life insurance policy? We think not. If the estate or the beneficiary gets this sum the surviving partners pay just so much less, as it must be credited on the $50,000; or, to put it in another way, if the surviving general partners have paid the $50,000 they become entitled to the proceeds of this life insurance policy. We cannot read this agreement in any other way. It states that the policies are obtained for the purpose of securing repayment to the limited partner of his contribution and that they have been assigned to him or his executors for this purpose. The partnership paid all the premiums. Upon the death of any partner the proceeds of the policies on his life " shall be applied in repayment of any unpaid balance of the limited partner's contribution." The limited partner agrees, upon the repayment of his contribution, to reassign all the policies to the firm. The limited partner or his estate has no interest in the policy upon his life or upon the lives of his associates beyond the securing of the $50,000. When this contribution is repaid all interest in any or all of the insurance policies terminates. This is what the agreement says and this is what the courts must say.

Later the Connecticut General Life Insurance policy, with the consent of all parties, was changed from a " term policy " to a " straight life policy," which cost more money. The partnership evidently did not desire to pay the additional premium, although they were willing to continue paying the original sum. The premium on the term policy had been $885.06. This was

increased for the straight life policy to $1,419.88. The balance Mr. Jones agreed to pay himself, the firm at all times to carry the $885.06 as a firm expense as theretofore. The purpose of this policy and the terms of the agreement were in no way to be changed except in this one particular.

To cover this point the parties executed an additional agreement on the 3d day of August, 1928. It made no changes in the original agreement of January 2, 1928, except to take care of this additional payment of premium and the disposition of the straight life policy after dissolution, not solely in case of Jones' death. This supplementary agreement in these particulars reads as follows:

" Premiums on the policies of Messrs. Morrison and Banigan and the premium on the $28,000 Aetna Life Ins. Co. Policy N566100 of Mr. Jones shall be treated as items of expense of the firm. Premiums on the $22,000 Conn. Gen'l. Life Ins. Co. Policy 182170 of Mr. Jones, which policy was formerly a ' term policy ' but was converted into a ' straight life ' policy upon the payment by Mr. Jones of required additional premiums, shall be paid by the firm in the amount of $885.06 per annum and treated as a firm expense; Mr. Jones shall pay the balance of the premium on said policy in excess of $885.06.

" All of the above described policies have been obtained for the purpose of securing repayment of the Limited Partner's contribution and have been assigned to such Limited Partner or his executors.

" Upon the decease of any one of the partners the proceeds of the policy or policies on the life of such deceased partner shall be applied in repayment of any unpaid balance of the Limited Partner's contribution, and any such proceeds not required for this purpose shall be the property of the firm. The Limited Partner agrees that at any time upon the repayment of his con-

tribution in full, he, or in case he is dead, his legal representative, will assign and deliver to the firm all of the above policies then outstanding, except the $22,000 Conn. Gen'l. Life Ins. Co. Policy 182170 which policy shall be the sole property of the Limited Partner."

Here again we have the clear statement that upon the decease of Charles H. Jones (one of the partners) the proceeds of the policies on his life shall be applied in repayment of any unpaid balance of the limited partner's contribution. The Connecticut General Life Insurance Company policy is thus included in this disposition for there is no exception to this part of the agreement.

What, however, are we to do with the last sentence in this paragraph? We must remember that the lives of all the partners were insured for the benefit of Jones. Therefore, when he was paid his contribution his interest in all the policies terminated. Not so, however, with the Connecticut General Life Insurance Company policy. He had become interested in the continuance of this policy for his life so that he was paying part of the premium as well as the firm. Therefore, if he were alive when a settlement with him was made, he would want this life policy continued, not surrendered. The firm having settled with him would no longer continue to pay on this policy. As to all the other term policies they were to be surrendered to the firm. This seems the only rational and consistent explanation of this last sentence. The firm was carrying the $22,000 policy by paying the premium of $885.06 annually as a firm expense. If Jones died, the proceeds were to be applied in repayment of his contribution. If the firm were dissolved during his lifetime, of course there would be the proceeds of no policy on his life from which his contribution could be repaid. Yet the general partners would owe him $50,000, and it was agreed that if this $50,000 were paid he could have the straight life policy, need not surrender it with the others; it would be his. Dissolution might

come from other causes than the death of Jones — by agreement, expiration of the articles or the death of Morrison or Banigan. Should the latter die, Jones got his $50,000 from Banigan's life insurance in the Aetna. That would settle Jones' account. Then he, *or*, if he subsequently died, his executors, would surrender all the policies except the $22,000 in the Connecticut General which was to belong to Jones after such settlement. This seems plain enough and is only complicated by the terse and limited manner of expression in the agreement. The fundamental provision, that the policies on Jones' life, if dissolution came by reason of his death, should pay his contribution, was not altered. A surmise as to the reason:— Jones had established the business; he was leaving it to the younger men and becoming a limited partner. His capital he left in the business, or a part of it. How was his estate to be paid in case he died? The young men insured his life and carried the insurance. This was security for Jones and was reducing the risk for the younger men. The purpose seems clear and we should not now frustrate it.

Note that the $22,000 policy " shall be the sole property of the limited partner," not the estate of the partner or his executors.

We, therefore, hold that the defendants are entitled to the proceeds of this policy and not the executors.

The judgment below should, therefore, be reversed, without costs, and judgment directed in favor of the defendants in accordance with this opinion.

POUND, Ch. J., LEHMAN, O'BRIEN and CROUCH, JJ., concur; KELLOGG and HUBBS, JJ., not voting.

Judgment accordingly.